SPRONG, administratrix, etc., v. BOSTON AND ALBANY RAILROAD
COMPANY.

*Negligence — railway brakeman riding on engine — injury to servant from
negligence of fellow servant.*

The head brakeman of a freight train, while riding on the engine, was killed
by an accident happening to the train. It appeared from the evidence that
the duties of deceased called him to every part of the train, including the
engine, and that he had on previous occasions ridden with the superintend-
ent of the road and with another general officer of the company to whom
deceased was subordinate on the engines of the company, without objection.
*Held*, that riding on the engine was not negligence *per se* on part of deceased,
and this was not affected by the circumstance that a regulation of the com-
pany forbade engineers to allow any person to ride upon the engines with-
out express authority, it not having been shown that deceased had personal
knowledge of such regulation.

The question whether the co-servants of deceased were guilty of negligence
contributing to the injury was a question for the jury, there being a conflict
of testimony on the subject.

EXCEPTIONS ordered to be first heard at general term. The
action was brought by the plaintiff Emilie E. Sprong, as adminis-
tratrix of Charles H. Sprong, deceased, to recover damages for his
death, alleged to have been caused by the negligence of the
defendant.

The deceased was at the time of his death in the employ of
defendant as head brakeman of a freight train. He was killed by
an accident happening to the train on which he was stationed, and
while riding on the engine of such train, under the following cir-
cumstances, as stated in the opinion of P. POTTER, J., when the
case was before the general term on a previous appeal :

On the 3d of February, 1870, about a quarter before five o'clock
in the morning, he left East Albany for Pittsfield on a train of
eleven freight cars, drawn by the engine " Maine." Previous to the
time of starting, another freight train of eighteen cars had departed
from the same place, going in the same direction, drawn by the
engine called the " Louisville." Before reaching Chatham-Four-
Corners, at about six o'clock, while upon a heavy up-grade, eleven
cars which had become detached from the preceding train, and
were rapidly descending this grade, came in collision with the

engine of train upon which Sprong was a brakeman, and Sprong with the conductor and fireman were immediately killed.

Upon the first trial a verdict was rendered in favor of the plaintiff, which was set aside by the general term and a new trial ordered.

The cause was again tried at the Albany circuit, before Mr. Justice INGALLS and a jury, in December, 1872, and another verdict rendered for the plaintiff for $5,000. The exceptions taken by the defendant were ordered to be heard in the first instance at the general term. The facts are similar to those stated in the opinion of POTTER, J., when the case was first heard with the exceptions referred to in the following opinion. At the close of the plaintiff's evidence and of the whole case, the defendant's counsel moved for a nonsuit on various grounds, which motion was denied and an exception taken. A motion was made for a new trial on the minutes, which was denied and an appeal taken from the order. The court ordered the exceptions taken to be first heard at general term.

*Samuel Hand,* for plaintiff.

*Geo. W. Miller,* for defendant.

MILLER, P. J. This case, as now presented, shows some variation from the facts which appeared when last before this court, when a new trial was granted upon the ground that the plaintiff's intestate was guilty of negligence which contributed to produce his death, and by means thereof the defendant was relieved from liability. It then appeared from the testimony of the engineer on the train at the time of the collision, one of the plaintiff's witnesses, on his cross-examination, that the place of the deceased was on the top of the train at the rear of the first car behind the engine. This testimony was unexplained and not contradicted. At the last trial the same witness testified that the place of deceased, as head brakeman, was on the engine at times; that upon an ascending grade, where the train was when the accident happened, his position was anywhere on the train where his duty called him, and he had charge of the whole train. If his duty called him at the front end of the car, it was his duty to be there; if at the rear, then there. The witness, after explaining that the head brakeman was partially under the instruction of the engineer, and required to obey his calls; to apply the brakes from the whistle, and if any thing is

wrong to notify the engineer, proceeds to state, "hence his place is upon the engine as much as upon the car. If a brake falls down he tells of it. We have to have such a man. It is difficult to fix the position of the head brakeman, for he has several positions where he should be for different duties." Another engineer testified that the head brakeman's duties did not pertain particularly to putting on the brakes, but that he was to put on shackles and pins, and used to communicate with the conductor.

It was also proved upon the last trial, and is not contradicted, that it was a common custom on the defendant's road for the head brakeman to ride upon the engine in company with Mr. Chapin, the superintendent of the road, and Mr. Rockafeller, the head conductor of freight trains, who had charge of the brakemen of freight trains, and that these agents of the company had knowledge of the fact, never objected to it, and thus sanctioned the practice.

These additional facts materially varied the case from the one presented upon a former trial, and independent of any other circumstances or facts which might tend to establish that the deceased was not at his post of duty, left a fair question for the jury to determine whether he was guilty of negligence.

It is contended, however, by the defendant's counsel, that the deceased was on the engine in violation of a rule of the company, that engine men should not allow any person to ride upon the engine without express authority, and therefore cannot be excused from the charge of negligence. I think that this position is not sound. It will be observed that it does not appear that the rules of the company were brought to the knowledge of the deceased, or that he ever heard of them, and the proof shows that the brakemen were not furnished with copies of them. It also appears that the instructions themselves do not define the brakeman's post of duty, although he is not allowed to be in a car when a train is running. It would, therefore, follow that he was to be at the place required for the performance of his duty; and unless the rule cited is not to be varied under any circumstances whatever, that he might, from the testimony, be at times necessarily called to be on the engine. I am inclined to think that the printed instructions upon the whole are not inconsistent with proof that it was the custom for the brakeman to ride upon the engine with the consent and approval of the agents of the company.

Unless the rule in question was inexorable as well as utterly

inconsistent with the other printed instructions, then it is manifest that there was evidence from which it might be inferred that the deceased was not out of the line of his duty when he was killed. I am also of the opinion that these regulations are not so rigid but that when the exigency of the case demands it, they may be departed from, and when agents of corporations vested with comprehensive powers sanction a departure from strict compliance with their requirements, I think that an employee who has neither knowledge nor notice should not be held responsible for negligence.

The fact that the deceased had been upon the engine for some time, and the testimony of the engineer that he did not send for him to come upon the engine at this time, should be taken into consideration in connection with the other evidence, but was not so entirely conclusive as to take the case from the consideration of the jury.

It cannot be said as a matter of law that the fact of deceased being on the engine was negligence *per se*, but it was merely evidence for the consideration of the jury, which was fairly submitted to them by the court.

The question whether the co-servants of the deceased were guilty of negligence which contributed to the injury, was also for the jury. In the case of *Flike* v. *Boston & Albany R. R. Co.*, where the injury was caused at the same time as in the case at bar, the company were held responsible and a recovery was sustained. The same rule must govern the case now considered and is an answer to the last point.

It follows that the court properly refused to nonsuit the plaintiff, and as there was no error in any of the rulings at the trial, the order denying a new trial must be affirmed and judgment ordered for the plaintiff on the verdict, with costs.

*Judgment accordingly.*